IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | |
|---|---|
| GERALD MARTINEZ, § | |
|     Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. V-11-25 |
| § | |
| HECTOR TALAMANTEZ, *et al.*, § | |
|     Defendants. § | |

## MEMORANDUM OPINION AND ORDER

Gerald Martinez, a Texas prison inmate, has filed a civil rights complaint against City of Victoria Police Officers claiming that they subjected him to excessive force during his arrest. The defendants have filed a motion for summary judgment supported by records, sworn statements, and video recordings of the incident in question. Martinez has filed a response with evidence in support. After reviewing the pleadings and evidence, the court will grant the motion and dismiss this action for the reasons set forth below.

### I. Plaintiff's Claims and Allegations

Martinez sues Victoria Police Officers Hector Talamantez, Joe Valadez, and Jeff Hobbs,[1] and claims that the defendants used excessive force in violation of the Fourth Amendment when they arrested him on or about May 4, 2009. He contends that the defendants' actions were unprovoked and unnecessary and that he suffered severe injuries as a result of their willful acts. Martinez alleges that the defendants pursued him in patrol cars as he was driving to his mother's home. When he arrived at his mother's house, he got out of his car and raised his hands. Despite the fact that Martinez offered

---

[1] Martinez also named other parties who were allegedly involved in the use of force. Their response is not necessary because the defendants who have answered the complaint have demonstrated that there is not a genuine issue regarding any material fact and that all defendants are entitled to judgment as a matter of law. *Lewis v. Lynn*, 236 F.3d 766, 767-68 (5th Cir. 2001).

no resistance the defendants grabbed him and slammed him against his car. Martinez alleges that the defendants then lifted him, slammed him onto the ground, and kicked and punched him. He further states that he was beaten after he had been subdued and handcuffed. Martinez asserts that he required hospital care after suffering a broken right wrist, a broken hand, and fractured vertebra.

Martinez seeks $2,000,000 in monetary damages for the alleged violation of his civil rights. He also seeks $10,000,000 in punitive damages for the defendants' malicious acts.

## II. Defendants' Arguments and Evidence

Defendants Talamantez, Valadez, and Hobbs have filed a Motion for Summary Judgment (Docket Entry No. 18) in which they deny Martinez' allegations including his claim that they had used force against him that was clearly excessive or objectively unreasonable. They also deny that they used any force against Martinez that resulted in a constitutionally sufficient injury. The defendants have attached the following exhibits, which include two videos of the incident, in support of their motion:

| | |
|---|---|
| Exhibit 1 - Hector Talamantez' Patrol Car Video | (Docket Entry No. 18-1) |
| Exhibit 2 - Joe A. Valadez' Patrol Car Video | (Docket Entry No. 18-2) |
| Exhibit 3 - Affidavit of Jefferson Hobbs | (Docket Entry No. 18-3) |
| Exhibit 4 - Affidavit of Joe A. Valadez | (Docket Entry No. 18-4) |
| Exhibit 5 - Affidavit of Hector Talamantez[2] | (Docket Entry No. 18-9) |
| Exhibit 6 - Affidavit of Police Chief Jeffrey Craig | (Docket Entry No. 18-6) |

---

[2] Hector Talamantez' affidavit was filed subsequent to the defendants' motion for summary judgment. A notice indicating an intent to file a supplement (Docket Entry No. 18-5) was submitted with the other exhibits attached to the defendant's motion.

2

      Exhibit 7 - Affidavit of Dr. John McNeill, D.O.      (Docket Entry No. 18-7)

      Exhibit 8 - Gerald Martinez' Medical Records      (Docket Entry No. 18-8)
         (with a Business Records Affidavit)

In summary, the defendants contend that Martinez had led them on a high speed chase after Officer Talamantez had attempted to make a routine traffic stop upon observing Martinez' erratic driving behavior. Instead of pulling over, Martinez increased his speed when Talamantez turned on his emergency lights. Additional Victoria Police Department Officers joined the pursuit as it progressed through city neighborhoods and onto Highway 87. At one point, Martinez pulled over on Highway 87, as if to stop, and signaled the officers to approach his car. When the officers complied, Martinez sped away. The chase ended in front of a mobile home in Nursery, an unincorporated community in Victoria County, Texas.

Martinez got out of his car after he parked it at the mobile home. The officers followed Martinez onto the property and got out of their patrol cars. They then approached Martinez and ordered him to get on the ground and put his hands out. When Martinez refused to comply, Officer Talamantez pushed Martinez against his car. Then both Officers Talamantez and Valadez grabbed Martinez and forced him to the ground. Martinez continued to struggle and failed to follow orders to place his hands behind him. In response, Valadez "put [his] left knee on Martinez' lower back." (Docket Entry No. 18-4, at 2). Valadez contends that he had been trained to do this in order to gain control over a suspect who was resisting arrest. *Id*. The maneuver worked, and Martinez immediately cooperated by offering his hands for cuffing. Martinez was then lifted off the ground and escorted to Talamantez' patrol car.

While Valadez and Talamantez were subduing Martinez, Hobbs discovered a passenger in Martinez' vehicle, later identified as Callie Cano. Hobbs states that he opened the passenger door and

ordered Cano to get out of the car and get on the ground. When Cano complied, Hobbs called for help from another officer, McDaniel, who had been assisting Valadez and Talamantez, who by this time had managed to cuff Martinez. McDaniel then helped Hobbs place Cano in handcuffs. After cuffing Cano, Hobbs then searched Martinez' car for drugs. Hobbs asserts that he never made any physical contact with Martinez.

Martinez waited in Officer Talamantez' car while the officers secured the area and searched for illegal drugs. He initially complained that the cuffs were cutting the circulation to his hands. Talamantez told Martinez that he would loosen the handcuffs soon, but that he would have to wait. After a second request by Martinez, Talamantez removed him from the patrol car, loosened Martinez' cuffs, and placed him back in the car. Talamantez asserts that the only force that he used against Martinez was when he pushed him against Martinez' car and that this was necessary to gain control over him because he was still on his feet and unrestrained at that time.

In addition to the statements of the police officers who were present at the incident, the defendants have submitted a statement from Victoria City Police Chief Jeffery J. Craig (Docket Entry No. 18-6) giving his assessment of the incident. Chief Craig states that he has 30 years of law enforcement experience including 14 years of holding leadership positions. He also states that he has extensive training and experience in use of force cases. Chief Craig asserts that he has viewed the video recordings of the arrests (Docket Entry Nos. 18-1 and 18-2) and verifies that they were taken from Victoria Police Department patrol car cameras. He states that he is aware that excessive force is defined as force that is clearly excessive to the need for force that was needed and the excessiveness was objectively unreasonable. *Id.* Based on his training and experience, Chief Craig states that Officer Valadez using his knee against Martinez' back was a reasonable method to gain

control over Martinez (Docket Entry No. 18-6, at 2). In making this assessment, Chief Craig points out that Martinez had led the defendants on a high speed chase through neighborhoods running stop signs and red lights. He also remarks that Martinez taunted the officers on the highway by slowing down and then speeding off again. He states that Martinez refused to follow orders to keep his hands where they could see them and that he was uncooperative during the entire pursuit and arrest. Chief Craig observes that a suspect is more under control while lying on his stomach rather than standing, but he is not completely under control until he has been cuffed. He states that the officers were justified in handling Martinez in the manner depicted in the video because they used lawful tactics to control him and place him in custody after a highspeed chase involving an uncooperative suspect. *Id.* at 2-3.

Apart from arguing that the use of force was reasonable, the defendants assert that there is no evidence showing that Martinez was injured during the incident as a result of their use of force. In support of this argument, the defendants have submitted Martinez' medical records and a physician's affidavit by John McNeill, D.O. (Docket Entry No. 18-7), noting Martinez' treatment and actions during and immediately after the arrest. Dr. McNeill asserts that he has viewed the two videos (Docket Entry Nos. 18-1 and 18-2) showing Martinez' arrest and has studied the medical records, including the X-rays, made pursuant to Martinez' treatment after the arrest.

Dr. McNeill comments that the videos depict Martinez being arrested by several Victoria Police Department Officers after he exits a car. *Id*. at 2. He observes one of the officers "forcefully placing a knee in the back of Gerald Martinez in the process of placing Mr. Martinez under arrest." *Id.* Once the handcuffs are placed on Martinez, one of the officers attempts to lift him from the

ground by pulling on the handcuffs. Martinez is then placed in the back of a patrol car where his behavior and comments are recorded by a video camera mounted inside the car.

Dr. McNeill remarks that Martinez' only complaint while in the back of the car is that the cuff on the right hand is too tight and is cutting the circulation (Docket Entry No. 18-7, at 2). Martinez does not state that his right hand is broken or indicate that his movements were restricted in any manner associated with fractures, and there is also no complaint about Martinez' back. Dr. McNeill also remarks that Martinez does not appear to be in any physical distress while he is sitting in the back of the car. He notes that Martinez is leaning forward, twisting, and rotating his body left and right. Martinez is also speaking to the officers and is not wincing or grimacing in any kind of pain. *Id.* Dr. McNeill states that acute fractures are exquisitely painful and that the unfortunate recipient of such an injury is often significantly incapacitated. In the doctor's opinion, Martinez' movements, facial expressions, and speech patterns are not consistent with such an injury. *Id.*

Dr. McNeill gives his assessment of the EMS records and the records at the Emergency Room of the Citizens Memorial Center in Victoria, where Martinez was taken after the arrest. He notes that the records reflect that Martinez is in "no acute distress and is complaining of low back pain." *Id*. at 3. He observes that X-Rays were taken of Martinez' spine and that there was a fracture of the T-12 vertebrae which appear[ed] to be new when compared to lateral checking from 2 December 2008." *Id.* However, McNeill notes that Martinez' reported pain was 8 to 10 inches lower. It is also noted that the attending physician, Dr. Allen, made the statement to Martinez, "[Y]ou have a fracture in your upper spine at T-12, this appears old and is not where you are currently having pain." *Id.* Dr. McNeill also observes that the T-12 vertebrae is not in the lower back. He also notes there is no

mention in the EMS or ER records of Martinez experiencing any pain in his hand, wrist, elbow, or shoulders (Docket Entry No. 18-7, at 3).

Dr. McNeill states that a T-12 vertebrae fracture revealed in Martinez' X-Rays is "immediately incredibly painful." *Id*. In other words, if Martinez had sustained such an injury during his arrest he would have experienced severe pain and reduced mobility. This medical prognosis contrasts with the police video depicting Martinez sitting in the back of the patrol car and complaining only about his right hand being numb due to the tightness of the cuffs. *Id.* McNeill points out that X-Rays taken of the right hand area on June 26, 2009, were negative, indicating that no injuries were present.

Dr. McNeill concludes with the statement that it is his opinion that Martinez did not suffer a T-12 compression fracture during the arrest on May 4, 2009. *Id.* at 5. Instead, it is his opinion that the fracture occurred before the arrest. Dr. McNeill also states that it is his opinion that Martinez did not sustain any injury to his hands, wrists, elbows or shoulders as a result of the defendants' actions during the arrest. *Id.*

In summary, the defendants contend that they did not use excessive force in arresting Martinez and that Martinez was not injured as a result of their actions.

### III. Plaintiff's Response and Arguments

Martinez filed a response (Docket Entry No. 24) opposing the defendants' motion for summary judgment and has submitted records in support of his arguments. He contends that the evidence shows that the defendants engaged in acts that were objectively unreasonable and which they should have known were in violation of Martinez' clearly established rights. He has also filed several motions (Docket Entry Nos. 26, 27, and 28) seeking to strike the defendants' evidence in

support of their motion for summary judgment. In one motion (Docket Entry No. 26), Martinez argues that Dr. McNeill's affidavit should not be considered because he was not present during the incident and that his diagnoses are based on conjecture. He also implies that Dr. McNeill is biased because his relationship with the defendants as a "semi-prison doctor" affects his analysis and opinion. *Id.* at 2. In his second motion (Docket Entry No. 27), Martinez contends that Chief Craig's affidavit (Docket Entry No. 18-7) should be stricken because he is biased due to his employment by the City of Victoria. He also contends that Chief Craig's affidavit should be stricken because he offers a conclusion of law with regard to whether the force used was excessive. Finally, Martinez challenges the police chief's qualifications as an expert. Finally, Martinez has filed a motion to strike the defendants' affidavits (Docket Entry No. 28) arguing that they are irrelevant and prejudicial. He argues that they do not contain sound facts. Instead, they include inconsequential details and legal conclusions concerning their conduct which undermines the court's role in making such a determination.

Martinez opposes the defendants' arguments by arguing that he was unarmed and that neither he nor his passenger presented any threat to the defendants (Docket Entry No. 24, at 17). He further contends that the defendants were not in any danger from the occupants in the area where he was arrested. *Id.* He points out that the highspeed chase was over when he was arrested. He also contends that he was cooperative and submissive when the defendants approached him. Martinez submits his copies of the police video recordings (Docket Entry No. 23) and contends that the recordings support his argument that no force was necessary to make the arrest. Martinez points out that the evidence shows that Officer Valadez forcefully used his knee against his back to subdue him. He contends that

this was unnecessary because he had already surrendered to the police. He also contends that Officer Talamantez' use of the handcuffs was clearly excessive against a subdued and compliant subject.

Martinez disputes the defendants' argument that he did not sustain a constitutionally sufficient injury as a result of their actions. He contends that Dr. Neill's assessment is contradicted by the records (Docket Entry No. 24, at 27). He also contends that the video does not support the doctor's statement that he was not complaining about his back and hand. Martinez asserts that his facial expressions indicate that he was experiencing pain and that his complaints are drowned out by static and music (Docket Entry No. 24, at 29-31). He also contends that his movements in the car are attributable to the pain he was experiencing. *Id.* at 24. He further states that there are records of his complaints at the hospital and that there are medical records that his back injury was new. Martinez contends that there is also contradictory evidence regarding whether his wrist was injured.

Martinez concludes by arguing that the evidence raises a genuine dispute of material facts regarding whether the defendants' conduct was clearly excessive and that the use of force was objectively unreasonable. He contends that the defendants are not entitled to qualified immunity and that a reasonable jury could return a verdict in his favor.

### III. Summary Judgment Standards

In deciding a motion for summary judgment, the Court must determine whether the pleadings and records indicate if there is a genuine issue regarding any material fact and whether the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 106 S.Ct. 2548, 2552 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

The party moving for summary judgment has the initial burden of demonstrating the absence of a material fact issue. *Kee v. City of Rowlett, Tex.*, 247 F.3d 206, 210 (5th Cir. 2001). To meet this

burden, the movant must present evidence that shows that the non-movant cannot carry its burden of proof at trial. *Smith v. Brenoettsy*, 158 F.3d 908, 911 (5th Cir. 1998). The movant may accomplish this by showing that the non-moving party has presented no evidence in support of his claim. *Stahl v. Novartis Pharmaceuticals Corp.*, 283 F.3d 254, 263 (5th Cir. 2002). Once the movant has met this burden, the non-movant must present specific facts showing that there is a genuine issue for trial; otherwise, summary judgment will be entered in favor of the movant. *Id.*

The court construes the evidence such that the non-moving party is favored and does not weigh the evidence, assess its probative value, or resolve any factual disputes. *Williams v. Time Warner Operation, Inc.*, 98 F.3d 179, 181 (5th Cir. 1996). However, the non-movant cannot rely on "conclusory allegations" or "unsubstantiated assertions" to establish that there is a triable issue. *Wallace v. Texas Tech University*, 80 F.3d 1042, 1047 (5th Cir. 1996). Nor is the non-movant's burden satisfied by casting "some metaphysical doubt as to material facts" or where "only a scintilla of evidence" has been brought forth. *Fiesel v. Cherry*, 294 F.3d 664, 667 (5th Cir. 2002); *Spectators' Communication Network Inc. v. Colonial Country Club*, 253 F.3d 215, 219 (5th Cir. 2001). Factual controversies will be decided in the non-movant's favor only when both sides have presented evidence showing that there is an actual controversy. *Burns v. Harris County Bail Bond Bd.*, 139 F.3d 513, 518 (5th Cir. 1998), *citing Little*, 37 F.3d. at 1075. In the absence of any proof, the court will not assume that the non-movant could or would prove the necessary facts. *Id.*

### IV. Analysis

The issue for consideration is whether there is a triable claim under 42 U.S.C. § 1983 regarding the defendants' use of force in arresting Martinez on May 4, 2009. To state a claim under section 1983, Martinez must (1) allege a violation of a right secured by the Constitution or laws of

the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. *Moore v. Willis Independent School Dist.*, 233 F.3d 871, 874 (5th Cir. 2000), *citing Lefall v. Dallas Independent School District*, 28 F.3d 521, 525 (5th Cir. 1994). Martinez' arrest must be analyzed under the Fourth Amendment. *Graham v. Connor*, 109 S.Ct. 1865, 1871 (1989); *Petta v. Rivera*, 143 F.3d 895 (5th Cir. 1998). In order for Martinez to establish his claim that law officials used excessive force against him during the arrest, he must prove that he "(1) suffered some injury which (2) resulted from force that was clearly excessive to the need for force; (3) the excessiveness of which was objectively unreasonable." *Heitschmidt v. City of Houston*, 161 F.3d 834, 839 (5th Cir. 1998), *citing Ikerd v. Blair*, 101 F.3d 430, 433-34 (5th Cir. 1996). When determining whether or not the use of force was excessive, the courts are mindful of the fact that police officers are often faced with difficult situations which demand split-second decisions. *Graham*, 109 S.Ct. at 1872. Consequently, the court will view the circumstances through the eyes of the officers at the scene and will not substitute its own hindsight in determining whether the defendants' acts were reasonable. "'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' violates the Fourth Amendment." *Id*. quoting *Johnson v. Glick,* 481 F.2d 1028, 1033 (2nd Cir. 1973). The force the defendants used against Martinez will be considered in context of the problem that the defendants were facing when they used the force and the threat posed by Martinez when they used the force. *Ikerd*, 101 F.3d at 434.

    A. <u>Martinez' Injuries</u>

By asserting an excessive force claim resulting in a constitutional violation, it is not necessary for Martinez to show that he was seriously harmed by the defendants' actions. *See Wilkins v. Gaddy*, 130 S.Ct. 1175 at 1177, *citing Hudson v McMillian*, 112 S.Ct. 995, 997 (1992). However, the extent

of the injury is a relevant factor in determining whether the defendants' use of force violated Martinez' rights. *Id.* at 1178. Martinez claims that his back and wrist were fractured as a result of the incident. The defendants contend that Martinez suffered no injuries and base their argument on the opinion of a doctor. Martinez challenges the doctor's qualifications to give an expert opinion and moves to strike his affidavit (Docket Entry No. 26).

Dr. McNeill's affidavit states that he has been trained at the University of North Texas Health Sciences Center in Fort Worth, Texas and that he is licensed to practice medicine in Texas (Docket Entry No. 18-7, at 1). His affidavit also includes a summary of his experiences working as an emergency room physician treating back, wrist, and hand injuries. *Id.* at 2. The court finds that Dr. McNeill has demonstrated that he is qualified to give an expert opinion with regard to whether Martinez was injured during the incident in question. *Watkins v. Telsmith, Inc.*, 121 F.3d 984 (5th Cir. 1997) (district courts have wide discretion in determining admissibility of expert testimony); *Watson v. United States*, 485 F.3d 1100, 1105-06 (10th Cir. 2007) (physician's medical degree, certification, and experience demonstrated sufficient knowledge to give opinion regarding alleged negligent treatment of incapacitated prisoner). Martinez' allegations of bias are unfounded, and Dr. McNeill's opinion is admissible because he has demonstrated his qualifications in the medical field and his opinion would assist the court in determining whether Martinez sustained any injuries at the hands of the defendants. *Daubert v. Merrell Dow Pharms., Inc.,* 113 S.Ct. 2786, 2796 (1993). Therefore, Martinez' motion (Docket Entry No. 26) will be denied and Dr. McNeill's opinion will be admitted.

A summary of Dr. McNeill's affidavit is that the doctor has reviewed the medical records and the video recordings of the incident and has concluded that Martinez did not suffer any fractures in his back, hands, wrists, elbows, or shoulders as a result of the arrest. Martinez opposes this by

presenting medical records which indicate that he has suffered injuries, possibly fractures, which occurred on or about the time of his arrest. Specifically, Martinez has submitted a record of a pain management consultation with a physician, Gregory L. Lilly, M.D., which occurred on May 18, 2009 (Docket Entry No. 24-3, at 7-10). The subject of the consultation was Martinez' arrest by the Victoria Police and the injuries he received. *Id.* at 7. Dr. Lilly reports that Martinez was wearing a splint and that an orthopedic surgeon had recommended a cast. *Id.* Martinez also reported pain in his left wrist as well as thoracic and low back pain. *Id.* A study of the X-Rays revealed a compression fracture. *Id.* at 9. Dr. Lilly's impressions were that Martinez was experiencing low back pain with possible lumbar discogenic injury at the L-5 level. *Id.* He also noted thoracic spine pain at the T-12 and T-4 levels with documentation from previous X-Rays. In addition, Dr. Lilly observed that Martinez had a right wrist sprain with a report of a fracture. *Id.* Given the evidence showing that Martinez suffered fractures as a result of the incident, there are controverted facts which indicate an actual controversy regarding the existence and the extent of his injuries, and summary judgment cannot be granted on the grounds that he did not suffer any injury.

      B. <u>The Reasonableness of the Defendants' Actions (The Videos)</u>

Although it is necessary for Martinez to show that he has suffered some injury at the hands of the defendants, the inquiry does not end there. *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999). The court must examine the circumstances in which the defendants used force to arrest Martinez before making a determination on whether there has been a civil rights violation. *Id.* at 703-04, *citing Ikerd*, 101 F.3d at 434. Notwithstanding the evidence showing that Martinez may have been injured during the arrest, the defendants may have been justified in using force, including force that

may have been lethal, against Martinez if he was engaged in unlawful conduct that could have resulted in injury or death. *Sappington v. Bartee*, 195 F.3d 234, 237 (5th Cir. 1999).

As noted above, the defendants have produced two video recordings from the dashboards of the two patrol cars used in the pursuit and the arrest (Docket Entry Nos. 18-1 and 18-2). Martinez has submitted his own copies of the recordings (Docket Entry No. 23). There being no indication that the video tape has been altered or adulterated, the court has reviewed it carefully because it is the most accurate depiction of what transpired during the incident in question. *See Scott v. Harris*, 127 S.Ct. 1769, 1776 (2007) (court could rely on a video recording which contradicted plaintiff's version of facts regarding a police chase which resulted in a collision leaving him a quadriplegic). A narrative of the contents are as follows:

The recording from Talamantez' camera (Docket Entry No. 18-1) begins with Talamantez pursuing Martinez through a neighborhood while shining a bright light on Martinez' car. The vehicles appear to be traveling at a high rate of speed with engines roaring and tires squealing as the cars barrel around corners and through intersections. Martinez runs at least four stop signs and one flashing light making no effort to slow. Several times he veers into the middle of the street straddling the double-yellow line. At another intersection, he runs a light that is clearly red and leaves a shower of sparks behind him as he bottoms out his car after hitting a bump apparently traveling way above the speed limit.[3]

After several minutes of being chased down side streets, Martinez makes his way to a highway (presumably Highway 87) and leads the police toward Nursery. At one point, Martinez

---

[3] The image of the sparks flying behind Martinez' car is worthy of a Hollywood movie or of the video described in *Scott v. Harris*, 127 S.Ct. at 1776.

slows down and appears to stop. He sticks out his hand as if to signal the police. It is unclear what Martinez' intentions are in slowing down and gesturing with his hand; however, he immediately takes off when the police slow down also. Within a minute of Martinez' false stop, he slows down again indicating with his left hand that he is turning off the highway. He then leads the police into what appears to be a trailer park where he stops his car and gets out.

Once the vehicles have stopped, several police converge on Martinez shouting commands to get on the ground and put his hands out. Although Martinez does not appear to be armed, he does not immediately comply with the commands and one of the officers (presumably Talamantez) throws him against his car. Another officer (presumably Valadez) grabs Martinez, throws him on the ground, and forcibly places his knee in Martinez' back. Martinez is then cuffed and led away. The entire transaction, from Martinez exiting his car to his being led away in cuffs, takes about a minute. The period of time between Talamantez first making contact with Martinez and Valadez putting his knee in Martinez' back is less than 15 seconds. The only forcible acts against Martinez are Talamantez' forcing him against the car, Valadez forcing him to the ground, and Valadez' use of his knee against Martinez' back. Martinez is quickly led away after he has been cuffed. Valadez' video record (Docket Entry No. 18-2) depicts the same events from a slightly different angle. In both recordings, Martinez has led the defendants on a highspeed chase endangering their lives and the lives of others. Once Martinez is cornered in the trailer park, the defendants move swiftly and decisively without resorting to any unnecessary violence or gratuitous blows.

A number of factors must be considered in determining whether the defendants' actions were reasonable. Martinez' willing initiation of a high speed flight from the police would have justified their use of force, even potentially lethal force, to stop him from harming others. *Scott*, 127 S.Ct. at

1778-79. When Martinez exited the car, the defendants were unaware of whether he was armed or what his intentions were. They only knew that he had led them on a high speed chase in an apparent desperate attempt to get away from them. Such circumstances warranted the defendants' decision to use an appropriate amount of force as a precaution against the possibility that Martinez may have been armed and dangerous. *See Anderson v. City of Bainbridge Island*, 472 Fed. Appx. 538 (9th Cir. 2012); *Connors v. Graves*, 538 F.3d 373 (5th Cir. 2008).

The video recording is a prime example of how the police are confronted with situations calling for rapid decisions. *Graham v. Connor*, 109 S.Ct. at 1872. *Id.* The defendants acted quickly after concluding the high speed chase, and the court cannot second guess the defendants' decisions where there is no time allowed to make a measured assessment of the situation. *Id.* Although Martinez turned out to be unarmed, the defendants did not know this when he got out of the car, and his failure to comply with orders to put his hands up weighed in favor of using force to subdue him. *See Deville v. Marcantel*, 567 F.3d 156, 167 -168 (5th Cir. 2009), *citing Mecham v. Frazier,* 500 F.3d 1200, 1205 (10th Cir. 2007); *Wertish v. Krueger,* 433 F.3d 1062 (8th Cir.2006). Valadez' use of his knee to gain Martinez' immediate submission was justified. *Bozung v. Rawson*, 439 Fed. Appx. 513, 521 (6th Cir. 2011); *Borneman v. Rozier*, 398 Fed.Appx. 415, 418-419, (10th Cir. 2010); *Sullivan v. City of Pembroke Pines,* 161 Fed. App'x 906, 910 (11th Cir. 2006). The tactic was apparently effective because no further struggling occurred and further injuries were avoided. Valadez is entitled to qualified immunity for using a tactic that he had been instructed to use against a suspect who was resisting arrest. *Id.*

Martinez complains that his wrist was injured by the cuff. The video record includes his complaints about his wrist. It also indicates that the cuffs were loosened in a few minutes. Despite

the fact that the cuffs may have been adjusted too tightly, such action "does not amount to excessive force." *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001). As noted, the defendants worked quickly, and the injury was the result of haste and not malice. In view of the record showing that the defendants had arrested Martinez after a high speed chase and had used a minimal amount of force to subdue and arrest him, the defendants are entitled to summary judgment as a matter of law. FED. R. CIV. P. 56. Therefore, all defendants named by Martinez are entitled to the benefit of summary judgment regardless of whether they have answered the complaint or joined in the motion. *Patel v. Haro*, 470 Fed.Appx. 240, 245 (5th Cir. 2012), *citing Lewis*, 236 F.3d at 767–68.

## V. Martinez' Motions

Martinez filed a motion for service on all of the defendants. It is not necessary that the unserved defendants join in this action because the defendants who have answered the complaint have demonstrated that there is no genuine issue as to any material fact and that all of the defendants are entitled to judgment as a matter of law. *Id.* Therefore, the motion (Docket Entry No. 13) will be denied.

Martinez filed several motions to strike affidavits submitted by the defendants in support of their motion for summary judgment. In addition to challenging Dr. McNeill's expertise with regard to physical injuries (Docket Entry No. 26), Martinez challenges Police Chief Craig's expertise as a law enforcement official (Docket Entry No. 27). He also moves to strike the affidavits submitted by Officers Talamantez and Valadez on the basis that he challenges the veracity of their content (Docket Entry No. 28). The court concludes that Chief Craig has demonstrated that he is qualified to give an opinion on the actions of the defendants. *Watkins*, 121 F.3d 984. The court also finds that the affidavits submitted by Officers Talamantez and Valadez are relevant in determining the thought

processes of the defendants as well as the circumstances of the incident. *See Deshotels v. Marshall*, 454 Fed.Appx. 262 (5th Cir. 2011). Therefore, the motions (Docket Entry Nos. 26, 27, and 27) will be denied.

Martinez has filed a motion to strike the defendants' pleadings on the basis that they are "argumentative to be argumentative" (Docket Entry No. 35, at 3) and are not supported by the evidence. He has also moved to strike copies of his medical records submitted by the defendants on the basis that they are unverified (Docket Entry No. 39). The motions will be denied because the defendants' affidavits assert facts based on their personal knowledge consistent with Rule 56(c)(4) of the Federal Rules of Civil Procedure, and Martinez' medical records (Docket Entry No. 18-8) are accompanied by a business records affidavit in compliance with the Federal Rules of Evidence. FED. R. EVID. 803(6); FED. R. EVID. 902(11).

## VI. Conclusion

The court **ORDERS** the following:

1. The defendants' Motion for Summary Judgment (Docket Entry 18) is **GRANTED**.

2. Martinez' motions (Docket Entry Nos. 13, 26, 27, 28, 35, and 39) are **DENIED**.

3. This civil rights complaint, filed by Gerald Martinez, is **DISMISSED** with prejudice under FED. R. CIV. P. 56(c).

**SIGNED** on this 28th day of September, 2012.

_____
JOHN D. RAINEY
SENIOR U.S. DISTRICT JUDGE